IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| JOHN DOE,<br><br>        Plaintiff,<br><br>v.<br><br>TRUTHFINDER, LLC,<br><br>        Defendant. | Case No.:   4:25-cv-3187-JD<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

John Doe ("Plaintiff" or "Mr. Doe") by and through his counsel brings the following Complaint against TruthFinder, LLC ("Defendant") for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, arising out of a tenant screening report ("consumer report") wherein Defendant published to Plaintiff's potential landlord *sealed* criminal records and the criminal record of another.

## INTRODUCTION

1. This is an individual action for damages, costs, and attorney's fees brought against Defendant pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

2. Defendant is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis. It sells consumer reports, also known as tenant screening reports, generated from its database and furnishes these consumer reports to mortgage brokers, landlords, and property management companies who use the reports to make decisions regarding prospective borrowers and tenants.

3. Defendant assembled and published an inaccurate consumer report to Plaintiff's prospective landlord, which inaccurately reported to Plaintiff's landlord that Plaintiff was

1

convicted of a crime – but the conviction belonged to another. Further, and at minimum, Defendant's report also suggested that Plaintiff was convicted, or charges were still pending against Plaintiff in relation to two other crimes – those charges were dismissed and further sealed and should never have been reported. Stated otherwise, all three criminal records reported by Defendant should not have been reported in the first place.

4. Specifically, in or around late January 2025, Defendant reported two criminal cases that had been dismissed and were *sealed* on or about February 17, 2022, and June 14, 2022.

5. Further, Defendant was reporting the *sealed* criminal records with no disposition information which is patently inaccurate as it makes it appear as though the *sealed* criminal records were still pending or as if those cases resulted in convictions.

6. In fact, the cases in Plaintiff's criminal records were *dismissed* about a year prior to being *sealed*.

7. To make matters worse, Defendant's inaccurate consumer report included a class-C misdemeanor weapons charge with a Failure to Appear disposition that did not belong to Plaintiff.

8. Plaintiff has no other criminal records to speak of, much less a record with a misdemeanor weapons charge.

9. Plaintiff's prospective landlord denied Plaintiff's housing application after receiving Defendant's report wherein Defendant published *sealed* criminal records with no disposition information that should not have been reported and the aforementioned criminal record of another consumer.

10. Defendant's inaccurate reporting could have easily been avoided had Defendant performed a cursory review of the widely available public court records from Florence County, South Carolina and Marion County, South Carolina prior to publishing Plaintiff's report to his prospective landlord.

11. Had Defendant performed a cursory review of the public court records, it would have discovered that the two charges levied against Plaintiff were not only dismissed but *sealed* more than two years prior and did not exist in public records.

12. Moreover, had Defendant performed a cursory review of the public court records it would have discovered that the misdemeanor weapons charge belongs to a different individual who is wholly distinguishable from Plaintiff by the date of birth and social security number.

13. Defendant does not employ reasonable procedures to assure the maximum possible accuracy of the information it reports regarding consumers. Defendant's failure to employ reasonable procedures resulted in Plaintiff's report being grossly inaccurate.

14. Specifically, Defendant does not employ reasonable procedures to prevent the inclusion of *sealed* criminal records in consumer reports.

15. Further, it's substantive reporting of the two sealed records was materially misleading at best given the disposition field was left blank despite both charges being dismissed years prior.

16. Additionally, Defendant does not employ reasonable procedures to prevent the reporting of criminal records belonging to a different individual from being reported on the subject report.

17. Defendant committed these violations pursuant to its standard policies and practices, which harm innocent consumers seeking housing by prejudicing their prospective landlords with inaccurate criminal record information.

18. Defendant's inaccurate report cost Plaintiff the ability to rent the living space that was suitably accommodating of his needs, causing him physical injury as a result of emotional distress, embarrassment, inconvenience, anxiety, fear of homelessness, and financial loss.

19. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing opportunities; damage to his reputation;

loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

20. As a result of Defendant's conduct, action, and inaction, Plaintiff brings claims against Defendant for failing to follow reasonable procedures to assure maximum possible accuracy based on 15 U.S.C. § 1681e(b) of the FCRA.

## PARTIES

21. John Doe ("Plaintiff" or "Mr. Doe") is a natural person residing in Florence, South Carolina, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

22. Defendant TruthFinder, LLC ("Defendant") is a California corporation doing business throughout the United States, including the State of South Carolina and in this District, and has a principal place of business located at 375 Camino De La Reina, Suite 400, San Diego, CA 92108.

23. Among other things, Defendant sells consumer reports, often called tenant screening reports, to mortgage brokers, property management companies, and landlords for their use in deciding whether to rent or otherwise offer housing to a prospective tenant. These reports are provided in connection with a business transaction initiated by the consumer.

24. Defendant is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f) because for monetary fees, it regularly engages in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer reports for tenant screening purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

## JURISDICTION AND VENUE

25. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

26. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## STATUTORY BACKGROUND

27. Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing. Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

28. While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports. 15 U.S.C. § 1681.

29. Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

30. Consumer reports that contain factually incorrect information which does not belong to the consumer at issue are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

## THE FCRA'S PROTECTIONS FOR HOUSING APPLICANTS

31. Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it also regulates consumer reports like the one Defendant prepared in Plaintiff's name.

32. The FCRA provides a number of protections for housing applicants who are the subject of consumer reports for the purpose of securing housing and credit.

33. In the parlance of the FCRA, tenant screening reports are "consumer reports," and providers of consumer reports, like Defendant, are "consumer reporting agencies." 15 U.S.C. §§ 1681a(d) and (f).

34. The FCRA imposes duties on consumer reporting agencies to assure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

35. Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

36. Defendant disregarded its duties under the FCRA with respect to Plaintiff's consumer report.

### DEFENDANT'S ILLEGAL BUSINESS PRACTICES

37. Over the past 15 years, there has been increased collection and aggregation of consumer data, including eviction and civil judgment records. As a result of the increasing availability of this data, there has been a boom in the tenant screening industry.

38. In the tenant screening industry, consumer reports are generally created by running automated searches through giant databases of aggregated criminal record data. The reports are created and disseminated with little to no manual, in-person review, and the underlying court records are rarely directly reviewed in creating consumer reports.

39. Consumer Reporting Agencies, like Defendant, collect millions of records from a number of sources with data from county, state, and federal level sources. The data included on the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

40. Given that Defendant is in the business of selling consumer reports, Defendant should be well aware of the FCRA and the attendant harm to consumers for reporting inaccurate or outdated information.

41. Defendant places its business interests above the rights of consumers and reports such inaccurate information because it is cheaper for Defendant to produce reports containing

information that is inaccurate and incomplete than it is for Defendant to exert proper quality control over the reports prior to their being provided to Defendant's customers.

42. Defendant reports such erroneous and incomplete information because it wants to maximize the automation of its report creation process, thereby saving the costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

43. Defendant charges its customers the same price for reports that are grossly inaccurate, as it does for accurate reports.

44. Appropriate quality control review of Plaintiff's report would have made clear that Defendant was reporting *sealed* criminal records with no disposition information along with criminal record information belonging to another consumer.

45. As a provider of consumer reports, Defendant should be aware of the FCRA requirements and should be a member of the Professional Background Screening Association ("PBSA"). PBSA hosts a conference at least once a year where presenters discuss compliance with federal and state consumer reporting laws.

## FACTS

### Plaintiff Applies for Housing with a Landlord

46. In or around January 2025, Plaintiff began searching for new housing in North Carolina on several platforms such as Marketplace. Specifically, Plaintiff was searching for a living space that was in a safe neighborhood, clean, within his budget, and closer to his girlfriend.

47. Thereafter, upon Plaintiff's search for housing he found and toured a room near Charlotte, North Carolina. In accordance with Plaintiff's desires, the room was available, and Plaintiff decided to apply with the landlord.

48. Accordingly, in or around late January 2025, Plaintiff submitted all applicable personal identification, employment documents, and proof of income and completed the housing application for the room.

### Defendant Published an Inaccurate Consumer Report to the Landlord

49. The landlord contracted with Defendant to conduct tenant screening on prospective tenants to determine whether the prospective tenant is eligible to rent an apartment.

50. In or around late January 2025, the landlord ordered a consumer report on Plaintiff from Defendant.

51. Thereafter, Defendant sold a consumer report about Plaintiff to the landlord, wherein Defendant published information including a compilation of Plaintiff's credit history, criminal history, and civil records history.

52. The consumer report, identified as "Background Report" by Defendant, is a consumer report regulated by the FCRA.

53. Within that consumer report, Defendant published the *sealed* criminal records that should have been excluded from the tenant purposed consumer report, thus rendering the report inaccurate.

54. Further, Defendant was reporting the *sealed* criminal records with no disposition information which is patently inaccurate and misleading as it makes it appear as though the *sealed* criminal records were still pending or as if those cases resulted in convictions.

55. The *sealed* criminal records reported by Defendant about Plaintiff should not have been included in Plaintiff's employment purposed consumer report.

56. A cursory review of the widely available public court records confirms that the criminal records reported by Defendant were *sealed* and no longer available.

57. In fact, the criminal records were *sealed* on February 17, 2022, and June 14, 2022.

58. Within that same consumer report, Defendant published more inaccurate information about Plaintiff.

59. Specifically, the "Criminal & Traffic Records" section of the consumer report included a misdemeanor weapons charge with a Failure to Appear disposition from Marion County, South Carolina.

60. The misdemeanor weapons charge (Case No. F910439) published by Defendant about Plaintiff to the landlord *did not* belong to Plaintiff.

| Mar 9, 1999 - Charges Filed - Weapons / Unlawful Carrying Of Pistol | | | | |
|---|---|---|---|---|
| Charges Filed Date<br>Mar 9, 1999 | Age at Time of Charge or Offense<br>29 | Crime Location<br>South Carolina Mc-cormick\|Marion, SC | Crime Type<br>Not Categorized | Offense Code<br>0044 |
| Offense Description<br>Weapons / Unlawful Carrying Of Pistol | Case Type<br>Misdemeanor C | Case Number<br>F910439 | Arrest Date<br>Feb 1, 1999 | Court Name<br>Marion County General Sessions |
| Disposition<br>Failure To Appear | Disposition Date<br>Aug 27, 1999 | Casecomments=indict-ment Num<br>1999gs3300153 | | |

61. Defendant published inaccurate information about Plaintiff. None of the above-referenced information should have been included in any consumer report about Plaintiff. Plaintiff's consumer report should not have listed any criminal records at all.

62. Specifically, it is indisputable that prior to furnishing the report about Plaintiff to the landlord, Defendant failed to consult widely available public court records in Florence County, South Carolina regarding the *sealed* criminal records, and Marion County, South Carolina which indicate that the aforementioned record did not belong to Plaintiff.

63. A cursory review of the widely available public court records confirms that the weapons charge belongs to an individual with a different date of birth and social security number. Defendant's unreasonable or non-existent procedures allowed Defendant to publish a report about Plaintiff wherein Defendant matched the criminal history of another individual to Plaintiff despite the date of birth and social security number being entirely distinguishable.

9

64. Had Defendant actually consulted or obtained the widely available public court records, it would have seen the obvious discrepancies between the other individual and Plaintiff.

65. The discrepancies that should have caused Defendant to realize Plaintiff is not the same person as the other individual to which Case No. F910439 belongs include the following:

    a. Plaintiff's date of birth, which was provided to Defendant prior to publishing the consumer report, is in January 1992, yet the public court records indicate that the other individual was born in 1970;

    b. The arrest date for the charge was in 1999, when Plaintiff was seven (7) years old;

    c. Plaintiff's Social Security number, which was provided to Defendant is contained on the face of the consumer report is entirely different than that of the other individual as confirmed by the public court records.

66. The sole reason that someone else's misdemeanor weapons charge and *sealed* criminal records with no disposition information and were reported as belonging to Plaintiff was that Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the consumer report it sold about Plaintiff to Plaintiff's prospective landlord.

67. Had Defendant followed reasonable procedures, it would have discovered that two of the three criminal records were sealed three years ago and should not have been reported.

68. Similarly, had Defendant followed reasonable procedures, it would have discovered that the stigmatizing misdemeanor weapons charge belonged to a different individual with a different date of birth and a different Social Security Number, and could not possibly have possible belonged to Plaintiff as he was seven years old at the time.

69. In preparing and selling a consumer report about Plaintiff, wherein Defendant published to Plaintiff's prospective landlord *sealed* criminal records that otherwise should not have been

included along with someone else's criminal record, Defendant failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

### The Landlord Denies Plaintiff's Housing Application

70. On or about February 2, 2025, after not hearing back from the landlord for a few days, Plaintiff followed up with the landlord regarding the status of his housing application.

71. Shortly thereafter, Plaintiff was notified by the landlord that his housing application was denied as a direct result of the *sealed* criminal records and the misdemeanor weapons charge reported by Defendant.

72. Plaintiff was shocked. The only two criminal records he had were dismissed and *sealed* and should not have been reported. There should not have been any criminal records on his report.

73. Plaintiff immediately explained to the landlord that his criminal records have been *sealed* and even sent the sealing order which was granted from over two years ago.  Plaintiff also explained that even if the records were not sealed, they were long ago dismissed and were not still outstanding or otherwise convictions despite the blank disposition field.

74. Plaintiff should never have been place in the position of having to explain past criminal records that had been dismissed and legally sealed. He certainly should not have had to send anyone his sealing order which is not available to the public.

75. Additionally, Plaintiff explained to the landlord the misdemeanor weapons charge did not belong to him but rather belonged to a different individual. Further, that he has a different social security number and date of birth from that of the individual responsible for the same.

76. Shortly thereafter, Plaintiff obtained a copy of the consumer report and was shocked and humiliated upon reviewing and seeing the *sealed* criminal records with no disposition information (implying it was a conviction or pending) along with the misdemeanor weapons

11

charge of another individual were published in the consumer report Defendant sold about Plaintiff to Plaintiff's landlord.

77. Plaintiff was very panicked, confused, and concerned about the impact of the *sealed* criminal records and the misdemeanor charge of another individual being reported on the consumer report – specifically, the impact of the same on his future.

78. Specifically, Defendant reported *sealed* criminal records with no disposition information that should not have been included in Plaintiff's employment purposed background check and further matched Plaintiff and another individual and published the misdemeanor weapons charge of another individual onto the consumer report about Plaintiff and sold that report to Plaintiff's prospective landlord.  This exculpatory public record information was widely available to Defendant prior to publishing Plaintiff's consumer report to the landlord, but Defendant failed to perform even a cursory review of such information.

79. Plaintiff continued to follow up with the landlord in hopes that the application for housing would be approved, however, the landlord ultimately cut off all communications with Plaintiff, denying Plaintiff's housing application.

80. Plaintiff reasonably believes that due to Defendant's inaccurate reporting, the landlord formed a negative opinion about Plaintiff and/or moved on to other candidates. Plaintiff felt humiliated and embarrassed having to discuss with the landlord dismissed and sealed records that no one should know about.

81. The sole reason Plaintiff was looking to move was because he was previously living with his girlfriend who shared the living expenses with him but unfortunately, she needed to move back home to take care of her sick mother, leaving Plaintiff to cover living expenses on his own.

82. Defendant's false report cost Plaintiff a housing opportunity that met his needs, including those attendant to affordability, convenience, and proximity to his girlfriend.

83. Specifically, Plaintiff was looking forward to renting out the room from the landlord as the living space Plaintiff applied for was located in Charlotte, North Carolina where his girlfriend was located, about half the price for rent as he was paying before, and in better neighborhood that was more convenient.

84. Due to Defendant's unreasonable procedures and despite Plaintiff's continued efforts to seek housing, Plaintiff was forced to move back in with his family which has caused tension within the household and a severe hit on Plaintiff's self-esteem as he faces being a 33-year old man having to move back into his family's home after being independent for much of his adulthood.

85. Further, Plaintiff's family's home is very far in distance from his girlfriend, which has caused several issues within their relationship.

86. The injuries suffered by Plaintiff as a direct result of Defendant's erroneous reporting are the type of injuries that the FCRA was enacted to address. Under common law, Defendant's conduct would have given rise to causes of action based on defamation and invasion of privacy.

87. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing opportunities; damage to his reputation; loss of sleep; stress to his romantic relationship; anxiety about moving back into his family home and stress on those relationships; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

**<u>CLAIMS FOR RELIEF</u>**

**COUNT I**
**15 U.S.C. § 1681e(b)**

**Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy**

88. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

89. Defendant is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

90. At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

91. At all times pertinent hereto, the above-mentioned tenant screening report was a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

92. Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the consumer report it sold about Plaintiff as well as the information it published within the same.

93. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing opportunities; loss of time and money trying to correct the consumer report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to her reputation; loss of sleep; stress to his romantic relationship; anxiety about moving back into his family home and stress on those relationships; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

94. Defendant willfully violated 15 U.S.C. § 1681e(b) in that its conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

95. Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for the following relief:

i. Determining that Defendant negligently and/or willfully violated the FCRA;

ii. Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

iii. Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

iv. Granting further relief, in law or equity, as this Court may deem appropriate and just.

## **DEMAND FOR JURY TRIAL**

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

//

RESPECTFULLY SUBMITTED this 15th day of April 2025.

*/s/ Dawn McCraw*
Dawn McCraw (SCB #105059)
Consumer Justice Law Firm PLC
8095 N 85th Way
Scottsdale, AZ 85258
T: (602) 807-1527
F: (480) 613-7733
E: dmccraw@consumerjustice.com

*Attorneys for Plaintiff*
*John Doe*